530 So.2d 18 (1988)
In the Matter of the ESTATE OF Oscar Reuben SMILEY, Deceased.
Ena Smiley Paschall, Ina Smiley Clayton, Reuben James Smiley, Eloise Blackwell, Yvonne Smiley Jones, Oscar Cortez Smiley, and Elsie Louis Smiley Blackwell
v.
William S. Smiley, Barbara Neal Polk, Barbara Deverne Smiley Johnson, Tommy Jeff Smiley, Cassandra Smiley Spearman, Bobby L. Shoemaker, Bay Springs Forest Products, Inc., Irwin J. White, Rex Timber Co., Inc., Curtis Alexander, and the Peoples Bank of Mississippi, N.A.
No. 57539.
Supreme Court of Mississippi.
July 13, 1988.
*19 William E. Ready, George L. Follett, Ready & Associates, Meridian, for appellants.
R.K. Houston, Bay Springs, George S. Monroe, Newton, William R. Ruffin, Bay Springs, for appellees.
Before DAN M. LEE, P.J., and PRATHER and GRIFFIN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This appeal raises questions concerning the constitutionality and the procedural requirements *20 of the illegitimate inheritance provisions of our intestacy statutes, Miss. Code Ann. § 91-1-15 (Supp. 1987).
Ena Smiley Paschall and her six siblings appeal a judgment entered in the Chancery Court of Jasper County in favor of the established heirs of Oscar Reuben Smiley and other defendants, who took title to real property through them. Plaintiffs below, Ena Smiley Paschall, Ina Smiley Clayton, Reuben James Smiley, Eloise Blackwell, Yvonne Smiley Jones, Oscar Cortez Smiley and Elsie Louise Smiley Blackwell, filed a motion to reopen the estate of Oscar Reuben Smiley, combined with additional counts petitioning to determine heirship and redivide assets. They sought to establish their right to share in the estate by virtue of being illegitimate children of Oscar Reuben Smiley.
The defendants answered and counterclaimed seeking cloud removal and quieting of title. The chancellor heard argument on joined motions for partial summary judgment by the plaintiffs, and judgment on the pleadings and summary judgment and motion to dismiss by the defendants.
The chancellor sustained defendants' motion to dismiss and motion for summary judgment, and denied appellants' motion for partial summary judgment. The chancellor thus dismissed plaintiffs' (appellants') suit with prejudice and confirmed title in the subject property in the defendants.
The chancellor rendered an opinion in which he found that the plaintiffs were without a remedy. His opinion included several reasons for his decision, though none were delineated in the judgment. These reasons will be discussed in more detail, but of significance was the chancellor's finding that so much of Miss. Code Ann. § 91-1-15, as allowed illegitimates to establish heirship retrospective to the effective date of the statute, was unconstitutional.
For reasons that follow, we hold that the chancellor prematurely decided the constitutionality of Miss. Code Ann. § 91-1-15(3)(d)(ii)(Para. 2). We decline to hold the provision unconstitutional on its face, and we reverse for a more complete factual development. As will become clear, the chancellor's decision likewise cannot stand for any of the other reasons he enumerated in his findings.
Finally, Mrs. Paschall and the other plaintiffs are not entitled to a summary judgment on the issue of paternity, and we reverse for continued proceedings consistent with this opinion.

FACTS
At issue is title to two tracts of real property. One tract consists of 120 acres acquired by Oscar Reuben Smiley during his lifetime, and the other consists of 56.667 acres (originally a one-third undivided interest in approximately 170 acres) which Smiley inherited by descent from his parents.
This is not the first time the estate has been before this Court. Smiley died on or about April 1, 1977. October 1, 1979, the plaintiffs in the present action, together with their mother, Leverett Jones, filed a petition seeking to establish themselves as Oscar Smiley's heirs by virtue of a common law marriage. In Paschall v. Polk, 379 So.2d 316 (Miss. 1980), this Court upheld a chancellor's determination that Oscar Reuben Smiley did not enter into a valid common law marriage with Leverett Jones. The decision affirmed the chancellor's determination that Barbara Neal Polk Smiley and her four children (the Smileys) were the heirs of Oscar Reuben Smiley. In that opinion this Court noted there was evidence that Oscar Reuben Smiley lived in the same home with Leverett Jones and fathered the six children who were plaintiffs below. The proof also showed that no marriage ceremony took place between the two and, in fact, Oscar Reuben Smiley actually ceremonially married Barbara Neal Polk in 1940, however, and this Court stated that "[t]he sole question presented here is whether or not a valid common-law marriage was consummated between Leverett Jones and Oscar Reuben Smiley prior to the time that Oscar Reuben Smiley and Barbara Neal Polk entered into a ceremonial marriage... ." Id. at 316.
*21 It was not until after this decision that the Mississippi Legislature amended Miss. Code Ann. § 91-1-15 to create a right of action in favor of illegitimate children to establish a right to inherit from their father. See Miss. Code Ann. § 91-1-15(3)(d)(ii)(Para. 2) (Supp. 1987) (effective from and after July 1, 1981).
The present action commenced June 25, 1984, just before the expiration of the statute of limitations imposed by Miss. Code Ann. § 91-1-15 on actions accruing before July 1, 1981, that being July 1, 1984.
Beginning after the effective date of the amendments to § 91-1-15, Barbara Neal Polk, administratrix, made the first of many conveyances involving the property. On October 8, 1981, Ms. Polk and her four children purported to convey by warranty deed the fee simple title to all the property at issue to Bobby Shoemaker for the consideration of $50,453.30 and legal services rendered.
November 9, 1981, Shoemaker executed a quitclaim deed to Bay Springs Forest Products, Inc., conveying all his interest to the 120-acre tract. September 17, 1982, Bay Springs subsequently granted a deed of trust on this property in favor of National Bank of Newton to cover a loan of $220,089.36. Bay Springs executed a memorandum of timber contract on November 14, 1983, to Rex Timber for all merchantable pine on the 120-acre tract.
January 4, 1984, Shoemaker executed a warranty deed in favor of Curtis Alexander (his father-in-law) conveying Shoemaker's interest in the 56.667 acres along with other property not involved with this suit.
After hearing arguments for and against all the motions before the court, the chancellor disposed of the case by granting judgment in favor of all defendants. The chancellor found (1) that Miss. Code Ann. § 91-1-15 (Supp. 1987) was unconstitutional to the extent it could be applied retroactively to divest previously vested real property interests, (2) that since § 91-1-15 was unconstitutional, and since plaintiffs knew of Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), they could have brought a similar claim in the original action and were thus barred by res judicata, (3) that if not barred by res judicata, then the six-year statute of limitations barred the plaintiffs because it ran from the date of the decision of Trimble v. Gordon, or (4) plaintiffs were barred because they had not complied with the procedural requirements of Miss. Code Ann. § 91-1-27 and -29, a prerequisite to bringing suit under § 91-1-15.
The appellants timely perfected this appeal from that judgment and finding.

I.

Did the Chancellor Err in Holding Miss. Code Ann. § 91-1-15 Unconstitutional as Applied?
The chancellor found that Miss. Code Ann. § 91-1-15 (Supp. 1987) is unconstitutional to the extent it is to be retroactively applied. He apparently reasoned that retroactive application of the amended version of § 91-1-15 so clearly deprived defendants of due process that he need not reach the merits of plaintiffs' claims prior to reaching the constitutional question. We do not agree.
At issue is § 91-1-15(3)(d)(ii)(Para. 2) (Supp. 1987), which provides:
A remedy is hereby created in favor of all illegitimates having any claim existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father and any claim by a natural father to inherit from or through an illegitimate child shall be brought within three (3) years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.
The power of judicial review includes the power to determine acts of the Mississippi Legislature unconstitutional. See Alexander v. State Ex Rel. Allain, 441 So.2d 1329, 1347 (Miss. 1983).
Legislative acts are, however, cloaked with a presumption of constitutionality, Mississippi Power Co. v. Goudy, 459 So.2d 257, 263 (Miss. 1984); Anderson v. Fred *22 Wagner and Roy Anderson, Jr., Inc., 402 So.2d 320, 321 (Miss. 1981), and unconstitutionality must appear beyond reasonable doubt. Goudy, 459 So.2d at 263, Anderson 402 So.2d at 321.
And, when there is doubt, this Court will construe the statute as constitutional if possible. It is said:
It has long been settled in this state that when the constitutionality of a statute is drawn into question, a construction will be placed upon it, if reasonably possible, to enable it to withstand the constitutional attack and to carry out the purpose embedded in the [statute]. Chassanoil v. City of Greenwood, 166 Miss. 848, 860, 148 So. 781, 783 (1933); see also State Ex Rel. Greaves v. Henry, 87 Miss. 125, 143-44, 40 So. 152, 154 (1906); Hart v. State, 87 Miss. 171, 176-77, 39 So. 523, 524 (1905); Burnham v. Sumner, 50 Miss. 517, 520-21 (1874).
Frazier v. State by and through Pittman, 504 So.2d 675, 708 (Miss. 1987) (Robertson, J., concurring in part, dissenting in part).
If there be two reasonable constructions of a statute, one constitutional and one unconstitutional, we must adopt the construction which will render the statute valid. See Craig v. Mills, 203 Miss. 692, 705-06, 33 So.2d 801, 804 (1948); Teche Lines v. Danforth, 195 Miss. 226, 12 So.2d 784 (1943).
True, due process under the Fifth and Fourteenth Amendments to the United States Constitution means that in some circumstances "vested" rights may not be disturbed. However, due process analysis focusing only on the "vested" nature of the rights involved is imprecise and conclusory. See R. Cunningham & D. Kremer, Vested Rights, Estoppel, and the Land Development Process, 29 Hastings L.J. 623 (1978). In any event, not every retrospective legislative act violates due process. The more recent Supreme Court application of due process holds that
Legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations... . This is true even though the effect of the legislation is to impose a new duty or liability based on past acts.
Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15-16, 96 S.Ct. 2882, 2892-93, 49 L.Ed.2d 752, 766-67 (1976). See Pension Benefit Guaranty Corp. v. Gray & Co., 467 U.S. 717, 729-30, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601, 611 (1984).
Thus, the constitutionality of this provision may indeed be a close question.
Here, instead of presuming the statute constitutional, the trial court reached the constitutional question when it may not have been necessary.
We have held repeatedly that courts have a duty to avoid passing upon the constitutionality of any law unless compelled to do so by an issue squarely presented to and confronting a court in a particular case. Western Line Consolidated School District, 433 So.2d 954, 957-58 (Miss. 1983). "Courts do not touch the constitutionality of a statute when it is unnecessary to do so under the particular facts of the case." Western Line Consolidated School District, 433 So.2d at 958. See also Roberts v. Mississippi State Highway Commission, 309 So.2d 156, 160 (Miss. 1975); Dunn v. Love, 172 Miss. 342, 355-56, 155 So. 331, 333 (1934), affirmed sub. nom., Doty v. Love, 295 U.S. 64, 55 S.Ct. 558, 79 L.Ed. 1303 (1935); Dart v. City of Gulfport, 147 Miss. 534, 113 So. 441 (1927); Town of Flora v. American Express Co., 92 Miss. 66, 69, 45 So. 149, 150 (1907); Hendricks v. State, 79 Miss. 368, 370, 30 So. 708, 709 (1901); Adams v. Capital State Bank, 74 Miss. 307, 317, 20 So. 881, 883 (1896).
This would seem especially true where the trial court disposes of a plaintiff's claim before reaching the merits. Where the alleged constitutional infirmity would result in an unconstitutional deprivation only if plaintiff prevails, it is premature to hold a statutory right of action unconstitutional, and thus unavailable, when it is unclear yet whether the plaintiff may actually recover.
Even assuming that there may not be a construction which would make the provision constitutional, this determination no doubt would be better left until it is necessary *23 to reach the question and we have a more complete factual development.
For these reasons, the chancellor erred in holding Miss. Code Ann. § 91-1-15(3)(d)(ii) unconstitutional upon a motion for summary judgment.

II.

Did the Chancellor Err in Finding Plaintiffs Barred by Res Judicata?

III.

Did the Chancellor Err in Finding Plaintiffs Barred by the Six-Year Statute of Limitations?
The Chancellor also found that Mrs. Paschall and the others were barred by res judicata.
The defendants below correctly state our rule concerning the application of res judicata as stated in Dunaway v. W.H. Hopper and Associates, Inc., 422 So.2d 749, 751 (Miss. 1982), where it is said:
Generally, four identities must be present before the doctrine of res judicata will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. Mississippi Employment Security Commission v. Georgia-Pacific Corp., 394 So.2d 299 (Miss. 1981); Cowan v. Gulf City Fisheries, Inc., 381 So.2d 158 (Miss. 1980); Standard Oil Co. v. Howell, 360 So.2d 1200 (Miss. 1978). If these four identities are present, the parties will be prevented from relitigating all issues tried in the prior lawsuit, as well as all matters which should have been litigated and decided in the prior suit. Pray v. Hewitt, 254 Miss. 20, 179 So.2d 842 (1965); Golden v. Golden, 246 Miss. 562, 151 So.2d 598 (1963). In other words, "the doctrine of res judicata bars litigation in a second lawsuit on the same cause of action `of all grounds for, or defenses to, recovery that were available to the parties [in the first action], regardless of whether they were asserted or determined in the prior proceeding.'" Key v. Wise, 629 F.2d 1049, 1063 (5th Cir.1980), reh. denied, 645 F.2d 72 (5th Cir.1981), cert. denied, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981) (quoting from Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)).
The chancellor reasoned that plaintiffs knew or should have known that Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), held as a matter of federal constitutional equal protection that statutes placing broad restrictions on illegitimates from inheriting from their fathers may be constitutionally infirm. Thus, plaintiffs "should have" brought a constitutional challenge to Mississippi's insurmountable barrier against inheritance by illegitimates, and the failure to do so created a bar, the chancellor reasoned.
This analysis must, however, be bottomed on the unconstitutionality of Miss. Code Ann. § 91-1-15(3)(d)(ii). We have held previously that the statute, as amended, created a new right of action which did not previously exist. Larsen v. Kimble, 447 So.2d 1278, 1282-83 (Miss. 1984).
It should go without saying that one cannot bring an action which is not yet in existence. The rights of Mrs. Paschall and the other plaintiffs, under state law, to share in their father's estate did not exist at the time the original heirship suit was heard. Though they might have challenged Mississippi's law in light of Trimble v. Gordon, the Legislature removed this obligation by amending Miss. Code Ann. § 91-1-15 and providing a retrospective remedy that did not accrue until after these plaintiffs' first suit was decided. In this sense, the right to establish heirship was not "available" for res judicata purposes until July 1, 1981.
Only if the inheritance statute is of no force or effect would the res judicata defense have merit. For only if the legislatively-created right were invalid, and thus of no effect, would plaintiffs below be forced to lie in the procedural bed they made in the previous litigation.
*24 For the same reason, the six-year statute of limitations is inapplicable. We have several times held that the six-year statute of limitation is inapplicable to suits brought by illegitimates whose cause of action accrued prior to July 1, 1981. See, e.g., Larsen v. Kimble, 447 So.2d at 1281-83.
As noted above, however, the chancellor prematurely reached the constitutionality of Miss. Code Ann. § 91-1-15(3)(d)(ii). Since this finding was premature, so too were these contingent findings.

IV.

Did the Chancellor Err in Finding that Plaintiffs Below Did Not Comply with Miss. Code Ann. § 91-1-27, -29?
The chancellor found that Plaintiffs below did not comply with the procedural prerequisites to establish their inheritance.
Section 91-1-15(3)(c) provides in part that an illegitimate might inherit from his father if:
There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless an action seeking an adjudication of paternity is filed within one (1) years after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of the child... .
Miss. Code Ann. § 91-1-27 provides:
In all cases in which persons have died, or may hereafter die, wholly or partially intestate, having property, real or personal, any heir at law of such deceased person, or any one interested in any of the property as to which he shall have died intestate, may petition the chancery court of the county in which said deceased had his mansion house or principal place or residence, or in which any part of his real estate may be situated, in case he was a nonresident, setting forth the fact that said person died wholly or partially intestate, possessed of real or personal property in the State of Mississippi, the names and heirs at law or next of kin, and praying that the person named in said petition be recognized and decreed to be the heir at law of said deceased.
Miss. Code Ann. § 91-1-29 provides:
All heirs at law and next of kin of said deceased who are not made parties complainant to the suit or petition, shall be cited to appear and answer the same. And in addition thereto a summons by publication shall be made addressed to "the heirs at law of ____, deceased," and shall be published as other publications to absent or unknown defendants, and the cause shall be proceeded with as other causes in chancery, and upon satisfactory evidence as to death of said person and as to the fact that the parties to said suit are his sole heirs at law, the court shall enter a decree that the persons so described be recognized as the heirs at law of such a decedent, and as such be placed in possession of his estate. And said decree shall be evidence in all the courts of law and equity in this state that the persons therein named are the sole heirs at law of the person therein described as their ancestor.
The issue here is whether by filing a petition which included one count seeking to reopen the estate, one count seeking to establish heirship, and one count seeking to redivide estate assets, Mrs. Paschall and the other plaintiffs sufficiently complied with the dictates of the statutes just mentioned. We hold that the plaintiffs did comply.
This Court has not squarely decided how an illegitimate might bring suit to enforce his remedy under § 91-1-15(3)(d)(ii)(para. 2). In Larsen v. Kimble, 447 So.2d 1278 (Miss. 1984), the Court dealt with two petitions, one to determine heirship, and one to reopen decedent's estate. This Court held that the illegitimate child was entitled to a full hearing on her claim, but the Court did not state whether either or both petitions were sufficient.
*25 In Ivy v. Illinois Central Gulf Railroad Co., 510 So.2d 520 (Miss. 1987), this Court held that a paternity determination according to §§ 91-1-27 and 91-1-29 must be held in chancery court before an illegitimate may assert any paternity-based claim in circuit court under the Federal Employers' Liability Act. We do not believe our holding here is inconsistent with Ivy, supra.
No doubt the Smileys and the other defendants below are correct that Miss. Code Ann. § 91-1-15(3)(d) contemplates a separate action filed in chancery court. However, reopening the estate and redividing the estate assets would seem to be necessary consequences of an affirmative determination of heirship under § 91-1-15(3)(d)(ii)(Para. 2). As a procedural matter, the heirship determination must precede relief under either of the other remedies, for it is only by virtue of the belatedly established heirship that an illegitimate is entitled to share in the estate. Only after the plaintiffs are successful in their action under § 91-1-27, et seq., will the constitutionality of 91-1-15(3)(d)(ii) come into play.
We think by seeking contingent relief Plaintiffs' petition is not fatally flawed. There is no suggestion in the record that Mrs. Paschall and her siblings did not provide the Smileys with notice in accordance with § 91-1-29, and, curiously enough, the statute does not require that notice be given to any other parties having an interest in the decedent's property; there being no failure of notice and no failure to bring a separate petition, there is no procedural default.

V.

Did the Chancellor Err in Failing to Grant Plaintiffs Below a Partial Summary Judgment?
The chancellor denied the motion of plaintiffs below for partial summary judgment on the issue of paternity. In support of their motion, plaintiffs below submitted a transcript of the original suit in which these same plaintiffs and their natural mother, Leverett Jones, sought to establish their right to inherit by virtue of Leverett Jones' common law marriage to Oscar Reuben Smiley. The Paschalls maintain that the original action established that Oscar Reuben Smiley was their natural father for purposes of this paternity action. The chancellor did not, however, reach this question since he disposed of their claim on other grounds. Here the Paschalls argue that they are entitled to summary judgment on this issue on remand. We do not agree.
It is clear that the issue in the former action focused only the existence vel non of a common law marriage. Paternity of these plaintiffs, while relevant, was not necessary to adjudication of the prior claim. In essence, this issue involves application of collateral estoppel.
Collateral estoppel requires that: "(1) the issue involved in the second suit was identical to the one involved in the previous suit; (2) the issue was actually litigated in the prior action, and (3) the resolution of the issue was necessary to the prior judgment." Welborn v. Lowe, 504 So.2d 205 (Miss. 1987). Here it is clear that Ms. Paschall's paternity, and that of the other alleged children of Oscar Reuben Smiley, was not actually litigated, nor was it necessary to support the prior judgment since the only question in the original action was whether Oscar Smiley had a common law marriage with Leverett Jones. Thus, in the first action their paternity was not necessarily determined, and thus the defendants should be allowed to litigate this question in a separate action.
The Plaintiffs' brief only asserts entitlement to summary judgment based upon the conclusive effect of the prior judgment. This claim is without merit for the reasons stated above. At oral argument, however, counsel for the Plaintiffs argued that the testimony in the prior action supported their claim.
Aside from its use for collateral estoppel, the transcript may be used to support summary judgment if the transcript is presented in the proper form. When certified in conformance with Rule 56(e), M.R.C.P., *26 there is authority to support treating the transcribed testimony the same as any affidavit. See 6 J. Moore & J. Wider, Moore's Federal Practice # 56.22[1] (1987) ("If, however, the transcript of the testimony at the state hearing had been properly certified, there is no reason why it may not be considered as an affidavit of the witnesses, assuming they were under oath at the state hearing, as long as the transcript in all other respects measures up to the requirements of Rule 56(e).")
First, there is no certification of this transcript appearing in the record. See Rule 902(1)-(4), M.R.E. There is Plaintiffs' assertion that the Smileys would likely stipulate to the transcript, but no stipulation in fact appears. Thus, the transcript does not meet Rule 56(e), M.R.C.P. Second, having reviewed the prior testimony, the Plaintiffs have not met their burden of demonstrating the absence of material factual issues. In so holding, we note that the Plaintiffs' burden at trial is to establish paternity by clear and convincing evidence. Miss. Code Ann. § 91-1-15(3)(c). This burden applies at the summary judgment stage as well as at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 216 (1986). Keeping in mind that the movants' papers must be construed in the light most favorable to the non-moving party, the transcript itself, viewed as an affidavit, does not establish the absence of material factual issues concerning the Plaintiffs' paternity.
For these reasons, partial summary judgment in favor of Plaintiffs was inappropriate. This, of course, does not prevent Plaintiffs from again moving for a summary judgment on this issue.
In conclusion, we find that the chancellor erred in granting summary judgment in defendants' favor, and in dismissing Plaintiffs' suit. We reverse and remand.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, J., concurs.
ROBERTSON, Justice, concurring:
I concur in the judgment the Court announces this day and in much that is said en route. There are points, however, where additional comment  and in one instance, critique  may be appropriate.
Why the Court does not reject forthrightly the constitutional attack upon Miss. Code Ann. § 91-1-15(3)(d)(ii) (Supp. 1987)  at least in part  escapes me. The majority's exposition on page 21 and the first part of page 22 is one I find quite convincing. I would have the Court declare that this statute is constitutionally valid as against a due process based attack that it divests vested rights of the legitimate heirs of Oscar Reuben Smiley, deceased.
It seems to my mind that this is precisely the sort of issue most susceptible of resolution via summary judgment. The trial judge was right in this, only to err one hundred eighty degrees in his substantive ruling. I am not quite sure what of value might be added via "a more complete factual development", for we consider what is essentially a question of law. The issue was presented four-square in the court below. It was decided below with a full rationale offered. It has been fully briefed on appeal. It is an issue which is of substantial importance and interest in this state. We have the responsibility to settle it once and for all. I would do so today.
This is not to say that there are not yet lurking two further questions of constitutional dimension regarding Section 91-1-15(3)(d)(ii). I refer first to the claims of the holders of another category of vested rights, the claims of bona fide purchasers and encumbrancers for value.
Second, there lurks the problem whether the three-year limitations period in that statute is long enough. If I understand the constitutional mandate, the period must be sufficiently long in duration to present a reasonable opportunity for those beneficiaries of the new right to assert their claims. This problem, of course, becomes particularly acute when the illegitimate children are still minors. See, Clark v. Jeter, ___ U.S. ___, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); Mills v. Habluetzel, *27 456 U.S. 91, 99-100, 102 S.Ct. 1549, 1555, 71 L.Ed.2d 770 (1982); and Pickett v. Brown, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983).
At least some courts have invalidated the three-year statute such as that enacted in Mississippi. See, e.g., Moore v. McNamara, 40 Conn. Supp. 6, 11-12, 478 A.2d 634, 637 (1984);[1]Callison v. Callison, 687 P.2d 106 (Okla. 1984); Commonwealth ex rel. Lepard v. Young, 666 S.W.2d 735 (Ky. 1983);[2]State ex rel. S.M.B. v. D.A.P., 168 W. Va. 455, 284 S.E.2d 912 (1981); State Dept. of Revenue v. Wilson, 634 P.2d 172 (Mont. 1981); County of Lenoir ex rel. Cogdell v. Johnson, 46 N.C. App. 182, 264 S.E.2d 816 (1980). In State Dept. of Health & Rehabilitative Services v. West, 378 So.2d 1220 (Fla. 1979) a four-year statute of limitations was invalidated and in State ex rel. Adult & Family Services Division v. Bradley, 295 Or. 216, 666 P.2d 249 (1983) a six-year statute of limitations was declared unconstitutional. That question, of course, awaits another day.

II.
I applaud the Court's disposition of the res judicata issue and its reasoning en route. Of course, we should not fault or penalize one for not asserting in the earlier action a property right which at the time of the earlier action had no legal existence. I only wish the Court had been favorably disposed to such a view when the lesser rights to life and liberty were at stake. See, Thomas v. State, 517 So.2d 1285, 1293-4 (Miss. 1987) (Robertson, J., dissenting); Jones v. State, 517 So.2d 1295, 1315 (Miss. 1987) (Robertson, J., dissenting); see also, Caldwell v. State, 517 So.2d 1360, 1361-4 (Miss. 1987) (Robertson, J., dissenting).

III.
Finally, I join wholeheartedly in Section IV of the majority opinion rejecting as it does the claim that plaintiffs have somehow missed jumping through a few procedural hoops said prerequisite to this action. The multi-count complaint here is more than sufficient to provide plaintiffs their ticket to litigate their claims on the merits.
I understand why the majority tiptoes past Ivy v. Illinois Central Gulf Railroad Co., 510 So.2d 520 (Miss. 1987), but any close observer will surely note that today's decision whittles away at the woodenness of Ivy, and, sub silentio, adds a touch of credibility to the one-lawsuit thesis I urged in my separate opinion in Ivy. See, Ivy v. Illinois Central Gulf Railroad Co., 510 So.2d 520, 527-9 (Miss. 1987) (Robertson, J., concurring).
NOTES
[1] On further appeal, the Connecticut Supreme Court did not reach the constitutionality of the three-year statute of limitations, as the Connecticut legislature, during pendency of the appeal, increased the limitations period from three to eighteen years. Moore v. McNamara, 201 Conn. 16, 513 A.2d 660 (1986).
[2] In Alexander v. Commonwealth ex rel. Mills, 708 S.W.2d 102 (Ky.App. 1986), a Kentucky court of appeals struck down a legislative enactment increasing the limitations period in paternity actions from three to four years.